UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LUDA BLAJEI,

        Plaintiff,

                                     Civil No. 09-13232
                                     Hon. Victoria A. Roberts

        v.

SEDGWICK CLAIMS MANAGEMENT
SERVICES, INC., and
GENERAL MOTORS LIFE AND
DISABILITY BENEFITS PROGRAM,

        Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY FEES [39]

This action was brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* On July 6, 2010, United States District Judge John Feikens issued an Opinion and Order vacating Defendants Sedgwick Claims Management Services, Inc. ("Sedgwick") and General Motor's ("GM") decision to terminate Plaintiff Luda Blajei's Extended Disability Benefits ("EDB") and remanding this case to Defendants for full and fair review. *Blajei v. Sedgwick Claims Mgmt. Servs., Inc.*, __ F. Supp. 2d __, No. 09-13232, 2010 WL 2696757 (E.D. Mich. July 6, 2010). Presently before the Court is Plaintiff's motion for attorney's fees and costs. (*See* Pl.'s Mot., Dkt. 39.) Defendants oppose this motion on the grounds that an award of attorney's fees would be "premature," and, in the alternative, Plaintiff cannot prevail under the five-factor test for fees set forth in *Sec'y of Dep't of Labor v. King*, 775 F.2d 666 (6th Cir. 1985). (*See* Defs.' Resp., Dkt. 40.) The Court has reviewed Plaintiff's Motion and Defendants' Response and has determined that a hearing will not aid the disposition of the present dispute. *See* E.D. Mich. LR

7.1(f)(2).  For the reasons set forth below, Plaintiff's Motion for Attorney Fees is GRANTED IN PART.

## I.  Background

Plaintiff, a 57-year-old woman and former GM project engineer, brought this action to reverse Sedgwick's decision, affirmed by the Plan Administrator and the GM Employee Benefits Plan Committee ("GM EBPC" or "Committee"), to terminate Plaintiff's EDB on October 23, 2007. Plaintiff suffers from, among other things, back pain and degenerative disc disease, which, according to her treating physicians, precludes her from engaging in even sedentary employment.

In a July 6, 2010, Opinion and Order ("Merits Opinion"), Judge Feikens concluded that Defendants acted arbitrarily and capriciously in terminating Plaintiff's EDB.  *Blajei*, 2010 WL 2696757, at *15-21. He found that Sedgwick inappropriately relied on a conclusory independent medical exam ("IME") report by Dr. A.N. Sinha which, among other problems, failed to adequately discuss, let alone rebut, the contrary diagnoses of Plaintiff's treating physicians.  *Id.* at *15-17.  He further found that a subsequent file review report by Dr. Robert Pick was similarly conclusory and strongly suggested that he cherry-picked certain favorable portions of Plaintiff's medical records and omitted unfavorable records from his review.  *Id.* at *17-19.  Judge Feikens concluded that the problems in these two reports were not cured by GM EBPC's final administrative review because the Committee's file review physician produced no written report, and, moreover, the Committee's review appears to have been based primarily, if not exclusively, on a single member's four-page report that did not include Plaintiff's medical records or the reports of Drs. Sinha and Pick.  *Id.* at *20-21.

In the Merits Opinion, Judge Feikens further held that Defendants breached the procedural

protections provided by ERISA and its implementing regulations. *Id.* at *22-24. Specifically, he found that the denial letters sent to Plaintiff were deficient because they (1) did not adequately discuss Plaintiff's medical reports or her treating physician's diagnoses, (2) failed to provide Plaintiff any instruction as to the type of additional medical information needed to perfect her claim, and (3) did not explain why IME and file physicians' reports were credited over her treating physician's diagnoses. *Id.*

Although Judge Feikens concluded that the decision to terminate Plaintiff's EDB was arbitrary and capricious, and that Plaintiff's due process rights under ERISA had been violated, he determined that the appropriate remedy was to remand to the plan administrator for full and fair review. *Id.* at *25-26. As discussed in the Merits Opinion, under Sixth Circuit Court of Appeals precedent, it is appropriate to remand a case where it is not *clear* that the plan participant is entitled to benefits. *Id.* at *25 (citing *Helfman v. GE Group Life Assur. Co.*, 573 F.3d 383, 396 (6th Cir. 2009) (remanding to plan administrator where "the integrity of the decision-making process ha[d] certainly been questioned" but "it does not appear that claimant is *clearly* entitled to benefits.")).

On July 20, 2010, Plaintiff filed her Motion for Attorney Fees. Defendants explain that since the Court's July 6, 2010, Opinion, there has "been no further determination entitling Plaintiff to continuation of EDB." (Defs.' Resp. at 3.) Accordingly, Defendants ask that Plaintiff's Motion be "denied at this time and Defendants be allowed to conduct a full and fair review of Plaintiff's claim as ordered by the Court." (*Id.*)

## II. Plaintiff's Motion For Attorney Fees is Not Premature

Defendants argue that "Plaintiff's counsel has acted prematurely by filing [a] motion for attorney fees *before* the administrator has had an opportunity to conduct the additional review of

Plaintiff's claim as ordered by the Court." (Defs.' Resp. at 6.) According to Defendants, if after a full and fair review, it is ultimately determined that Plaintiff is not entitled to EDB, Plaintiff will not have achieved the requisite success on the merits that warrants attorney's fees. (*Id.*) It, therefore, follows, Defendants claim, that it is premature to address the attorney's fees issue at this time. (*Id.*) The Court disagrees.

Plaintiff seeks attorney's fees pursuant to ERISA 502(g)(1), which provides:

> In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. § 1132(g)(1).

Recently, the Supreme Court settled a split among the federal courts of appeals by holding that under § 1132(g)(1), a district may exercise its discretion to award attorney's fees and costs "as long as the fee claimant has achieved 'some degree of success on the merits.'" *Hardt v. Reliance Standard Life Ins. Co.*, 550 U.S. __, 130 S.Ct. 2149, 2152, __ L.Ed.2d __ (2010) (citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)). In *Hardt*, the district court found "compelling evidence" that the plan participant was "totally disabled due to her neuropathy." *Id.* at 2154 (internal quotation marks omitted). Although the trial court was "inclined" to rule in the participant's favor, it decided that it was proper to remand and give the plan administrator a chance to remedy the deficiencies in its prior review. *Id.* (internal quotation marks omitted). On remand, the plan administrator awarded the participant long-term disability benefits, and subsequently, the participant moved for attorney's fees. *Id.* The district court awarded fees but the Fourth Circuit Court of Appeals reversed. *Id.* at 2155. The Court of Appeals held that § 1132(g)(1) requires a fee claimant to be a "prevailing party," which, in turn, requires the claimant

to have obtained an "enforceable judgmen[t] on the merits" or a "court-ordered consent decre[e]." *Id.* (alterations in original, internal quotation marks omitted).

In reversing the court of appeals, the Supreme Court rejected the notion that § 1132(g)(1) requires a fee claimant to be a "prevailing party" to be eligible for an attorney's fees. *Id.* at 2156. Noting that the plain text of § 1132(g)(1) "does not limit the availability of attorney's fees to the 'prevailing party,'" the Court concluded that § 1132(g)(1) should be read in light of Supreme Court precedents interpreting statutes that deviated from the American Rule yet did not have a prevailing party requirement. *Id.* at 2156-57. Among these precedents, the Court explained that

> *Ruckelshaus* lays down the proper markers to guide a court in exercising the discretion that § 1132(g)(1) grants. . . . [A] fees claimant must show "some degree of success on the merits" before a court may award attorney's fees under § 1132(g)(1) . . . . A claimant does not satisfy that requirement by achieving "trivial success on the merits" or a "purely procedural victor[y]," but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a "lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'"

*Id.* at 2158.

In this case, no such "length inquiry" is required. While Plaintiff was not awarded EDB, Plaintiff achieved "some degree of success on the merits." The termination of benefits by Sedgwick, GM, and the GM EBPC has been found arbitrary, and Plaintiff is now entitled to a fresh review of her claim. Further, on remand Plaintiff's award of Social Security Benefits will have to be considered by Defendants. *Blajei*, 2010 WL 2696757, at *26 n.12. Because the administrative denial of Plaintiff's EDB has been vacated, and because there is a substantial possibility that EDB will be granted upon remand, it would be improper to conclude that Plaintiff achieved only a "'trivial success on the merits'" or a "'purely procedural victory.'" *See Hardt*, 130 S.Ct. at 2158

(quoting *Ruckelshaus*, 463 U.S. at 688 n.9). This conclusion is buttressed by the fact that, pre-*Hardt*, a number of district courts in the Sixth Circuit applied the *Ruckelshaus* "some success" standard and reached the same conclusion when presented with the identical procedural posture. *E.g.*, *Walsh v. Metro. Life Ins., Co.*, No. 06-1099, 2010 WL 1609494, at *2 (M.D. Tenn. Apr. 20, 2010) ("While a party need not prevail entirely for the Court to consider an award of attorneys fees, some degree of success on the merits is generally required before a party is eligible for an award of attorneys' fees. A remand to the plan administrator constitutes a substantial level of success on the merits." (citations omitted)); *McKay v. Reliance Standard Life Ins. Co.*, 654 F. Supp. 2d 731, 736 (E.D. Tenn. 2009) ("Plaintiff is not a 'loser' in any sense; even if he ultimately is ineligible for benefits, he has still seen success on the merits because his case was remanded [to the plan administrator] for further consideration."); *Soltysiak v. Unum Provident Corp.*, 480 F. Supp. 2d 970, 974 (W.D. Mich. 2007) ("Plaintiff in this case . . . did obtain a significant degree of success on the merits of his claim. Plaintiff obtained a reversal of Defendant's denial of benefits and an order requiring Defendant to conduct a full and fair review of Plaintiff's disability claim.").

Defendants attempt to distinguish *Hardt* on its facts by arguing that this Court, unlike the district court in *Hardt*, did not explicitly state that there was "compelling evidence" in the record that Plaintiff is totally disabled from employment.[1] (Defs.' Resp. at 5-6.) Defendants also argue that

---

[1] In their Response, Defendants repeatedly emphasize that Judge Feikens previously found that there was evidence in the Administrative Record suggesting that Plaintiff may be able to engage in sedentary employment. *See Blajei*, 2010 WL 2696757, at *25. This finding, however, is not inconsistent with there also being "compelling evidence" suggesting that Plaintiff is disabled within the meaning of the Plan. Indeed, the very purpose remanding the instant case is for the Plan Administrator to weigh all the evidence—including the conflicting medical evidence—and determine if Plaintiff is entitled to EDB. *See id.* (citing *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622-23 (6th Cir. 2006) ("In this matter, we cannot say that [the participant] is clearly entitled to benefits. . . . Thus, we believe that a remand to the district court with instructions to remand to [the

6

*Hardt* is distinguishable because here, unlike in *Hardt*, Plaintiff has filed her motion for attorney's fees prior the plan administrator's decision on remand. (*Id.*) The Court acknowledges that there are certain factual differences between the instant case and *Hardt*. However, nothing in *Hardt* precludes an award of attorney's fees where a district court remands to the plan administrator without explicitly stating that there is "compelling evidence" that the participant is disabled, or where the plan administrator has not yet awarded benefits. In fact, the Supreme Court expressly left this issue open: "we need not decide today whether a remand order, without more, constitutes 'some success on the merits' sufficient to make a party eligible for attorney's fees under § 1132(g)(1)." *Hardt*, 130 S.Ct. at 2159; *see also Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 534 (6th Cir. 2008) (noting that, where district court remanded to plan administrator, "the possibility that [the participant] could receive attorney fees from [the administrator] even if he ultimately loses his case . . . . raises the question of whether a district court would always abuse its discretion by awarding attorney fees . . . to a claimant who has yet to obtain the sought-after award of benefits. *We need not address that issue in the present case*, however . . . ." (emphasis added)). Accordingly, even granting Defendants' factual distinctions between this case and *Hardt*, those differences do not require a finding that Plaintiff's Motion is premature.

Defendants also rely on *Weddell v. Retirement Comm. of the Whirlpool Prod. Employee Ret. Plan*, No. 07-0006, 2008 WL 343137 (N.D. Ohio Feb. 5, 2008) to support their argument that Plaintiff's claim for attorney's fees is premature. It is true that the court in *Weddell* concluded that

administrator] for a full and fair inquiry is the proper remedy here. This course is contemplated both by our precedent and by ERISA law. . . . Such a remedy will allow for a proper determination of whether, in the first instance, [the participant] is entitled to long-term disability benefits. *We are not medical specialists and that judgment is not ours to make*." (emphasis added))).

the issue of "attorney's fees is not ripe in situations, such as this, where a court remands a case to the ERISA administrator for full and fair review of benefits claims." *Id.* at *3. But the premise for this conclusion appears in the previous sentence: "ERISA permits for an award of attorney's fees only to a '*prevailing party* on the ERISA claim.'" *Id.* (emphasis added). Given the Supreme Court's holding in *Hardt*, this premise is now faulty. Accordingly, the Court finds that *Weddell* is of questionable precedential value on the issue of when it is appropriate to address the issue of attorney's fees, and the Court declines Defendants' invitation to follow it.[2]

For the forgoing reasons, I conclude that it is appropriate to rule on Plaintiff's Motion for Attorney Fees even though Plaintiff has presently only secured a remand to the Plan Administrator.

The Court now turns to the five-factor test set forth in *Sec'y of the Dep't of Labor v. King*, 775 F.2d 666 (6th Cir. 1985).

### III.  The *King* Factors Favor an Award of Attorney's Fees

In *King*, the Sixth Circuit Court of Appeals set forth a five-factor test that guides a district court's exercise of discretion under § 1332(g)(1):

---

[2] Defendants also cite *Pettigrew v. Prudential Ins. Co. of Am.*, No. 08-11683, 2009 WL 3152788 (E.D. Mich. Sep. 29, 2009) and *Richards v. Johnson & Johnson*, 688 F. Supp. 2d 754 (E.D. Tenn. 2010) in support of their claim that Plaintiff's Motion for Attorney Fees is premature. Neither of these cases requires much elaboration. In *Pettigrew*, the Court remanded to the plan administrator and stated—without further discussion—that an order awarding attorney fees and costs "would be premature at this stage of the proceedings." *Pettigrew*, 2009 WL 3152788 at *8. This case is not helpful to Defendants' cause as it was decided before *Hardt* and provides no analysis of the "some degree of success on the merits" standard. Similarly, in *Richards*, another pre-*Hardt* case, the court found that the plaintiff's claim for attorney's fees on a remand was premature but provided no real explanation as to why. *Richards*, 668 F. Supp. at 770, 788. One possibility is that the plaintiff in *Richards* had "submitted no information regarding the amount of her attorney's fees," *id.* at 788, and essentially conceded that her claim was unripe, *id.* at 770. In any case, *Richards* at most suggests that a court may, but is not required to, defer judgment on a claim for attorney's fees when the case is remanded to the plan administrator. Accordingly, *Richards* does not demand a different result here.

8

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Gaeth*, 538 F.3d at 529 (citing *Sec'y of the Dep't of Labor v. King*, 775 F.2d 666 (6th Cir. 1985); *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006)). Under the *King* test, no single factor is determinative, and thus, a "district court must consider each factor before exercising its discretion." *Id.* at 529 (internal quotation marks omitted).

A. Factor 1: Defendants' Culpability or Bad Faith

Defendants repeatedly emphasize that their conduct did not rise to the level of "bad faith." (Defs.' Resp. at 7 ("Nothing in the factual scenario equates to 'bad faith' on the part of Defendants."); *see also* Defs.' Resp. at 8.) As Plaintiff suggests, however, it is unnecessary to find bad faith to conclude that this factor favors an award of attorney's fees. (*See* Pl.'s Mot. at 4.) Rather, if a plan administrator's conduct is culpable, i.e., blameworthy, this factor favors an award of fees. *Elliott v. Metropolitan Life Ins. Co.*, No. 04-174, 2007 WL 1558519, at *3 (E.D. Ky. May 29, 2007) ("There is a distinction between culpability or bad faith, as evidence[d] by the inclusion of both terms and the presence of 'or,' but Defendant focuses almost exclusively on an alleged lack of bad faith in arguing that this factor does not weigh in favor of Plaintiff. However, the Court agrees with Plaintiff that, despite any direct evidence of bad faith . . . some level of culpability (i.e., blame) is necessarily attributed to Defendant . . . ."); *see also Frassrand v. Metropolitan Life Ins. Co.*, No. 07-2222009, 2009 WL 6313560, at *4 (E.D. Tenn. June 1, 2009) ("Contrary to MetLife's assertion, it is not necessary that the [court] have found bad faith on the part of MetLife as there is

a distinction between culpability and bad faith and this factor requires only culpability 'or' bad faith." (citation omitted)) *report and recommendation adopted by* 2010 WL 1252817 (E.D. Tenn. Mar. 24, 2010).

Defendants are correct, however, that where a plan administrator's conduct is more akin to an honest mistake than a deliberate or bad faith attempt to deny benefits, this factor cuts against awarding fees. *See Evans v. Metropolitan Life Ins. Co.*, No. 04-44, 2005 WL 2100655, at *3 (E.D. Tenn. Aug. 2, 2005). Further, while "an arbitrary and capricious denial of benefits does not *necessarily* indicate culpability or bad faith," Sixth Circuit Court of Appeals precedent "by no means *precludes* a finding of culpability or bad faith based only on the evidence that supported a district court's arbitrary-and-capricious determination." *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 530 (6th Cir. 2008) (internal quotation marks omitted).

Here, it is clear that Sedgwick and GM's conduct was highly culpable and borders on, if not crosses into, the realm of, bad faith. First, Defendants are at fault for crediting, without explanation, questionable independent medical consultants reports over the contrary findings of Plaintiff's treating physicians. Dr. Sinha's report was conclusory and did not explain why certain MRI reports, which, in Dr.'s Sinha's own words, "confirmed the presence of degenerative disc disease," were insufficient to support Plaintiff's claim of disability. *See Blajei*, 2010 WL 2696757, at *16. Further, Dr. Sinha's original, ambiguous finding as to Plaintiff's ability to return to work was modified—at the behest of Sedgwick—to unequivocally state that Plaintiff could work. *Id.* at *16-17. Dr. Pick's file review report was problematic because, among other things, it discussed medical reports that disfavored a finding of disability, but failed to mention or distinguish medical reports that supported Plaintiff's disability. *Id.* at *17-18. Given the deficiencies in these consultant reports, it is clear that

Defendants are culpable for their irrational decision to rely upon them. *Cf. Moon v. Unum Provident Corp.*, 461 F.3d 639, 643-44 (6th Cir. 2006) (reversing the district court on the culpability factor and finding that it weighed in favor of awarding attorney's fees where file review physician was employee of administrator and "ignored substantial evidence in the administrative record indicating [that the participant] was disabled").

Second, the effect of Sedgwick and GM's decision to credit conclusory independent medical consultant reports was magnified by the fact that Defendants sent denial letters to Plaintiff that failed to adequately explain why those reports were being credited over her treating physician's diagnoses. As discussed in the Merits Opinion, the denial letters did not

> make any mention of (1) the medical records submitted by Plaintiff in support of her claim, (2) her treating physicians' diagnoses, (3) what type of additional medical information should be submitted on appeal, or (4) why the conclusions of Drs. Sinha and Pick were being credited over her treating physician's finding of disability.

*Blajei*, 2010 WL 2696757, at *24. Defendants' inadequate explanation for terminating benefits cannot be considered akin to an honest mistake; rather, fault for drafting uninformative denial letters rests squarely on Defendants' shoulders.

Third, and particularly relevant to the Court's evaluation of the culpability-or-bad-faith factor, Defendants sought to terminate Plaintiff's EDB because Plaintiff missed an IME that she could not have received notice of until the day before the exam. As Judge Feikens explained in the Merits Opinion, this conduct suggests bad faith, and is, at a minimum, culpable conduct:

> Sedgwick sent Plaintiff a Fed-Ex regarding the [ultimately-missed] IME just two days before it was to take place; this Fed-Ex was left at Plaintiff's door around *2:00 p.m. the day before the exam*. The letter notified Blajei that her exam was in less than 24 hours—at 10:45 the next morning. Although Sedgwick also called Plaintiff about the exam, this too was not until the day before the exam. These facts

suggest that one of three scenarios occurred. Under the first, Sedgwick scheduled the exam well before it was to take place, but then waited until two days before the exam to attempt to inform Plaintiff of it. Under the second, Sedgwick never actually scheduled an exam, but instead sent the Fed-Ex knowing that it was unlikely that Plaintiff would be able to appear a day after receiving notice. The third possibility, and the one most forgiving to Sedgwick, is that the exam was simply scheduled on extremely short notice: two days. Even under the last of these possibilities, it appears that Defendants were searching for a procedural mechanism, even if unreasonable, that would allow them to deny benefits.

*Id.* at *21.

In short, it cannot be said that the errors in Sedgwick and GM's evaluation of Plaintiff's claim are attributable to honest or good faith mistakes; rather, examining Defendants' conduct as whole, the picture painted is one of a plan administrator grasping for reasons to deny Plaintiff EDB. Defendants' highly culpable conduct weighs heavily in favor of awarding attorney's fees.[3]

B. Factor 2: Defendants' Ability to Satisfy an Award of Attorney's Fees

Defendants concede that they have the ability to satisfy a fee award. This factor, therefore, weighs in favor of awarding attorney's fees.

---

[3] Defendants cite a number of cases where the court did not find bad faith or culpability. (Defs.' Resp. at 8-9.) However, Defendants make no effort to point out any factual similarities between those cases and the instant one beyond an arbitrary and capricious denial of benefits. (*See id.*) A review of Defendants' culpability-factor cases reveals that they provide little guidance as to the proper exercise of discretion these facts. Indeed, two of the cases relied on by Defendants, *Foltice* and *Mauer*, are *wholly* inapposite. *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, (6th Cir. 1996) (finding culpability "relatively slight" where defendant denied benefits due to erroneous interpretation of plan language); *Mauer v. Joy Techs., Inc.*, 212 F.3d 907, 918, 919 (6th Cir. 2000) (finding that district court did not abuse its discretion in concluding that there was not "a great degree of culpability" where the underlying issue was whether certain retirement benefits had vested under a series of collective bargaining agreements). There may be situations where a court, in exercising its sound discretion, will find negligible culpable conduct despite arbitrary and capricious decision-making. This, however, is not one those cases.

<u>C. Factor 3: The Deterrent Effect of an Award on Other Persons Under Similar Circumstances</u>

Relying on *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933 (6th Cir. 1996), Defendants argue that this factor weighs in their favor because "Defendants [have], at all times, acted in good faith." (Defs.' Resp. at 10.) Defendants are correct that in *Foltice*, the court reasoned that the deterrent effect of a fee award has more significance in case where the defendant engaged in culpable conduct as opposed to a case where arbitrary and capricious decision making was attributable to an honest mistake. *Foltice*, 98 F.3d at 937. As the analysis accompanying the first *King* factor makes clear, however, Defendants have not acted in good faith or made merely honest mistakes in arbitrarily terminating Plaintiff's EDB. Accordingly, Defendants have not persuaded the Court that this factor falls in their favor.

Nor is this a case where the facts are so atypical that the deterrence effect on other plan administrators would be negligible. *See Gaeth*, 538 F.3d at 531 ("The key question in analyzing this third factor is therefore whether the fee award would have a deterrent effect on other plan administrators."); *Moon*, 461 F.3d at 645 ("[T]he facts of this case are not so unique that they fail to serve any deterrence value to other insurance companies under similar circumstances."). In fact, there are several general principles underlying the Merits Opinion. For instance, it is inappropriate for a plan administrator to rely on conclusory independent medical consultant reports that fail to adequately address contrary medical evidence. *See Blajei*, 2010 WL 2696757, at *15-20; *Moon*, 461 F.3d at 645 ("The [underlying merits opinion] articulated important principles that all plan administrators should heed. For example, before terminating a plan participant's benefits, a plan administrator should ensure that the opinions upon which they rely to make their decisions to terminate are based on a thorough review of the administrative record."). As a second example, it

13

would be prudent for every plan administrator to have all independent medical consultants prepare a written report detailing the consultant's findings so that the report becomes a part of the administrative record and can serve as a proper basis for upholding an administrator's benefits decision. *See Blajei*, 2010 WL 2696757, at *21.

This factor weighs in favor of awarding attorney's fees.

D.  Factor 4: Whether Plaintiff Brought Suit to Confer a Common Benefit on All Participants and Beneficiaries or to Resolve Significant Legal Questions Regarding ERISA

This factor favors an award of attorney's fees where either (1) the purpose of the suit was to confer a common benefit on other plan participants, or (2) the case resolved a significant legal question regarding ERISA. *See Gaeth*, 538 F.3d at 529. Neither of these situations is present here: the ERISA legal issues were not novel, and Plaintiff concedes that her "motivation in pursuing [EDB] case against GM was to redress the injustice that occurred when *her* benefits were terminated." (Pl.'s Mot. at 5 (emphasis added).) Accordingly, this factor weighs against awarding attorney's fees.

E.  Factor 5: The Relative Merits of the Parties' Positions

This factor requires a consideration of the relative strength of the parties' positions. A number of district courts in the Sixth Circuit have found that where a plaintiff overcomes an arbitrary and capricious standard of review, and obtains a remand to the plan administrator, the plaintiff's position had more merit. *E.g.*, *Andrews v. Prudential Ins. Co. of Am.*, No. 08-14391, 2010 WL 1257784, at *2 (E.D. Mich. Mar. 29, 2010) ("As to the fifth factor—the merits of the parties' positions—this factor weighs in [plaintiff's] favor for the same reasons as the first factor. Namely, that [the plan administrator] wrongfully denied [plaintiff's] benefits."); *McKay v. Reliance Standard Life Ins. Co.*, 654 F. Supp. 2d 731, 739 (E.D. Tenn. 2009) ("The arbitrary and capricious standard

is highly deferential to ERISA plan administrators in their determinations of benefit eligibility . . . . Here, the fact that Plaintiff overcame this significant hurdle and achieved a remand to determine benefit eligibility means his position had significant merit, regardless of whether he is ultimately the prevailing party for purposes of the ERISA statute."); *Soltysiak v. Unum Provident Corp.*, 480 F. Supp. 2d 970, 975 (W.D. Mich. 2007) ("The fifth [*King*] factor . . . weighs in Plaintiff's favor. Plaintiff obtained a reversal [and remand] of Defendant's denial of his claim.").

The Sixth Circuit Court of Appeals, however, has suggested that it is also appropriate to look ahead to the likely outcome of the remand when evaluating this factor. *Gaeth*, 538 F.3d at 534. In *Gaeth*, the district court found that the plan administrator's decision to terminate plaintiff's benefits was arbitrary and capricious, and remanded to the plan administrator for further review. *Id.* at 528. The appellate court noted that in remanding, the lower court found conflicting evidence as to the participant's disability: there was "no objective medical evidence supporting [the plan administrator's] determination that [the participant] was able to return to his previous position," but, at the same time, the record contained only "minimal objective medical evidence of the [participant's] continued disability." *Id.* at 543. Given the conflicting evidence, the Sixth Circuit reasoned that it was possible that the plan administrator would ultimately prevail in showing that the participant was no longer totally disabled. *Id.* As such, the Court of Appeals concluded that "the merits of [the participant's] position are at best questionable as compared to the merits of [the administrator's] position, causing this factor to weigh against an award of attorney fees at this point in the proceedings." *Id.*

In the Merits Opinion, as Defendants emphasize, Judge Feikens stated,

> In this case, I cannot say that Plaintiff is "clearly entitled" to benefits so as to warrant an immediate grant of EDB. As Defendants point

15

> out, the record contains reports of objective tests, performed by
> Plaintiff's own physicians, that suggest she may be able to engage in
> sedentary employment.

*Blajei*, 2010 WL 2696757, at \*25.  Accordingly, as in *Gaeth*, it is possible that Defendants will

ultimately prevail on remand, and looking forward, the Courts concludes that their position has

substantial merit.

However, unlike *Gaeth*, there is not "minimal objective medical evidence" Plaintiff's

disability.  For example, Plaintiff's June 2005 MRI revealed "evidence of a severe degenerative disc

disease with spondylitic changes at C4-C5 and C5-C6." *Blajei*, 2010 WL 2696757, at \*3.   As

another example, Dr. Emmanuel Obianwu, an orthopedic surgeon performing an IME on behalf of

Sedgwick, found that Plaintiff "has significant degenerative disc disease  in her neck and lower

back," and found that she could only rotate her head about 30% of normal, and extension and flexion

of the cervical spine was 10% and 20% of normal, respectively.  *Id.* \*4.  Still further, a November

2, 2007, study performed by a Dr. Aronov compared Plaintiff's December 2004 cervical MRI

against a February 2007 cervical MRI and found that at the "C4-C5 level . . . there is uncovertebral

and endplate spurring, resulting in bilateral moderate to severe neural foraminal narrowing which

may have progressed since the previous exam." *Id.* \*9.  Accordingly, Plaintiff's position on remand

also has substantial merit and is not "at best questionable," as compared to Defendants' position.

*Cf. Gaeth*, 538 F.3d at 534.

In considering the conflicting medical evidence in the record, the arguments previously

advanced by the parties as to Plaintiff's disability, and the fact that Plaintiff has secured a remand

despite the deference accorded Defendants under the arbitrary and capricious standard, I conclude

that this factor slightly favors Plaintiff, or, erring in favor of Defendants, is largely neutral.

Upon consideration of all the *King* factors, Plaintiff should be awarded attorney's fees. The first factor, Defendants' culpability, weighs heavily in the Court's calculus and strongly favors a fee award. In addition, factors two and three—Defendants' ability to pay and general deterrence—favor awarding attorney's fees. Although Plaintiff sought to benefit only herself in bringing the instant action, this factor does not strongly disfavor a fee award. Finally, the relative merits of the parties slightly favors Plaintiff, or viewed favorably for Defendants, is a wash. Accordingly, the scales tip in favor of Plaintiff and it is appropriate to award attorney's fees.

## III. The Appropriate Award Amount

Plaintiff has requested $26,547.50 in attorney fees and $350.00 in costs. The fee amount is based on 35.1 hours billed by Attorney Allan Ben at a rate of $325/hour and 75.7 hours billed by Attorney Joshua Ben at a rate of $200/hour. (Pl.'s Mot., Exs. A-C.)

Although Defendants have made an outright challenge to Plaintiff's request for attorney fees, they have not alternatively argued for a reduction in the requested amount. Nevertheless, it is this Court's duty to independently determine whether Plaintiff's request is reasonable. *Soltysiak v. Unum Provident Corp.*, 480 F. Supp. 2d 970, 975 (W.D. Mich. 2007).

An appropriate starting point for determining whether a requested fee amount is reasonable is to determine the applicant's "lodestar," which is "the proven number of hours reasonably expended on the case by an attorney, multiplied by [the applicant's] court-ascertained reasonable hourly rate." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). Once the lodestar has been determined, "[t]he trial judge may then, within

17

limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *Id.*

### A.  Plaintiff's Counsel Expended a Reasonable Number of Hours On This Case

Plaintiff's counsel spent a total of 110.8 hours litigating this dispute.  Over half of these hours, 59.5, were spent on two tasks: reviewing the Administrative Record—which spans over 2,500 pages—and drafting a motion for summary judgment.  (Pl.'s Mot., Ex. C.)  Based on the Court's examination of the Administrative Record, the 59.5 hours Plaintiff expended on these two tasks is certainly reasonable.  Corresponding with Plaintiff, opposing counsel, and this Court, as well as preparing responses to Defendants' motions, account for the vast majority of the remaining 51.3 hours.  Upon a careful review, all of the time entries corresponding to these tasks also appear reasonable.

There is no reason to discount the number of hours Plaintiff's counsel expended on this litigation; Plaintiff's request to be compensated for 110.8 hours is reasonable.

### B.  Attorney Allan Ben's Hourly Rate Should Be Adjusted Downward

In determining whether a fee applicant's requested hourly rate is appropriate, a district court must "assess the 'prevailing market rate in the relevant community.'" *Adcock-Ladd*, 227 F.3d at 350 (quoting *Blum v. Stenson*, 465 U.S. 886, 893, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)).  The "relevant community" is the legal community within the court's territorial jurisdiction. *See id.*  The "prevailing market rate" should not exceed the amount necessary to cause competent legal counsel to perform the work required.  *Coulter v. Tennessee*, 805 F.2d 146, 148 (6th Cir. 1986) (reviewing 131 attorney fee shifting statues, including ERISA 502(g), and noting, "The statutes use the words 'reasonable' fees, not 'liberal' fees.  Such fees are different from the prices charged well-to-do clients by the most noted lawyers and renowned law firms in a region.  Under these statutes a

renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate.").

Although Plaintiff, as the party requesting attorney's fees, has the burden to establish that the hourly rates requested are based on comparable rates in the local community, *Iley v. Metropolitan Life Ins. Co.*, No. 05-71273, 2007 WL 37740, at *2 (E.D. Mich. Jan. 4, 2007), Plaintiff's Motion and supporting affidavits are deficient in this regard. Plaintiff requests that Attorneys Allan and Joshua Ben be compensated at rates of $325.00/ hour and $200/hour, respectively. (Pl.'s Mot., Ex. A, A. Ben Aff. ¶ 8; Pl.'s Mot., Ex. B, J. Ben Aff. ¶ 7.) In support of these rates, Plaintiff submits that Allan Ben has been a practicing attorney for over 40 years (A. Ben. Aff. ¶ 4) and Joshua Ben for about 10 years (J. Ben. Aff. ¶ 4). Further, Allan Ben is rated "AV Preeminent" by Martindale Hubbell, and has been named a "Top Lawyer" in ERISA law by DB Business Journal. (A. Ben Aff. ¶ 5.) The Court finds it curious, however, that both counsel merely aver that they "have been practicing ERISA law for a number of years" (A. Ben. Aff. ¶ 6; J. Ben. Aff. ¶ 5), without specifying the number years or cases litigated, or whether "ERISA law" encompasses cases similar to Plaintiff's. More importantly, Plaintiff's Motion and counsel's affidavits fail to provide any information that would aid the Court in determining the prevailing market rate for competent ERISA counsel in southeastern Michigan.

The Court has independently researched and reviewed a number of recent opinions in this district where the court awarded attorney's fees in an ERISA denial-of-benefits case. Based on this review, it appears that Allan Ben's requested rate of $325/hour is high. *See Andrews v. Prudential Ins. Co. of Am.*, No. 08-14391, 2010 WL 1257784, at *2 (E.D. Mich. Mar. 29, 2010) (finding

requested hourly rate of $325/hour "too high" and reducing rate to $250/hour); *Kramer v. Paul Revere Life Ins. Co.*, No. 04-74362, 2009 WL 2849067, at *7 (E.D. Mich. Sep. 1, 2009) (awarding rate of $275/hour where attorney requested $330/hour; noting "Rates in other fee awards granted in this district suggest a rate set at $275."); *Force v. Ameritech Corp., Inc.*, No. 03-71618, 2007 WL 1760909, at *4 (E.D. Mich. June 15, 2007) (finding that a rate of $260/hour for an attorney with 13 years of experience was "a bit high," and reducing rate to $215/hour); *Iley v. Metropolitan Life Ins. Co.*, No. 05-71273, 2007 WL 37740, at *2 (E.D. Mich. Jan. 4, 2007) (awarding rate of $225/hour where attorney requested $350/hour; noting that plaintiff "has not submitted any evidence from which this Court can conclude that $350.00 per hour is a reasonable hourly rate in the local community of the Metropolitan Detroit area for the services rendered in this case"). In light of the foregoing authority, I conclude that it is appropriate to lower Allan Ben's rate to $275/hour when determining Plaintiff's lodestar.

Joshua Ben's requested rate of $200/hour appears reasonable for an attorney who has been practicing ten years and has prior experience litigating ERISA cases. In addition, the Court's research has revealed nothing indicating that this rate is too high. Accordingly, Joshua Ben's rate is $200/hour for purposes of determining Plaintiff's lodestar.

### C. Calculating Plaintiff's Lodestar

Of the 110.8 hours Plaintiff's counsel has spent litigating this action, 35.1 are attributable to Allan Ben, while Joshua Ben's work accounts for the remaining 75.7 hours.[4] (Pl.'s Mot., Ex. C.)

---

[4] The accounting provided by Plaintiff's counsel incorrectly lists the total number of hours spent by Allan Ben at 103.3 hours and Joshua Ben at 5 hours. (Pl.'s Mot., Ex. C.) Despite this error, using the individual time entries listed, the Court was able to determine the proper division of time

Applying the previously-determined hourly rate of $275/hour for Allan Ben and $200/hour for Joshua Ben, Plaintiff's lodestar is $24,792.50 (35.1 hours x $275/hour + 75.7 hours x $200/hour).

### D.  Plaintiff's Attorney's Fees Award Should Be Proportional To Plaintiff's Success on the Merits

After a district court determines a fee applicant's lodestar, it may turn its attention to "other considerations that may lead the . . . court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).  Indeed, among the multitude of factors[5] that a district court may consider in deciding whether to adjust a fee applicant's lodestar, the most critical factor is the degree of success obtained.  *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (citing *Hensley*, 461 U.S. at 436).  Where the fee applicant achieves only partial success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  *Hensley*, 461 U.S. at 434.

---

between the two counsel.

[5]  A district court may adjust a fee applicant's lodestar according to the twelve factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974):

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed v. Rhodes*, 179 F.3d 453, 471-72 & n.3 (6th Cir. 1999) (citing *Johnson*, 488 F.2d at 717-19).

In *Weaver v. Dow Corning Corp.*, No. 07-10984, 2009 WL 2705827, at \*4 (E.D. Mich. Aug. 25, 2009) the Court awarded fifty-percent of the requested attorney's fees where the ERISA plaintiff sought an award of benefits but the court instead remanded for full and fair review. In his Report and Recommendation to Judge Paul Borman, the Magistrate Judge reasoned:

> while the Plaintiff was successful to some degree in his suit, it is also clear that Plaintiff's victory was not absolute. . . . Indeed, [the district court] denied Plaintiff's motion for judgment, [which sought an award of long-term disability benefits], and it is not yet clear what benefits Plaintiff will receive on remand [to the plan administrator]. Accordingly, the undersigned recommends that Plaintiff receive a proportionate award of attorney fees equal to his victory obtained in this case. . . .

*Weaver v. Dow Corning Corp.*, No. 07-10984, 2009 WL 2705830, at \*10 (E.D. Mich. June 15, 2009) *adopted in relevant part by* 2009 WL 2705827, at \*5 (E.D. Mich. Aug. 25, 2009) (finding "Magistrate Judge Pepe's recommendation that Plaintiff receive a proportionate award of attorney fees equal to his level of success to be both reasonable and fair").

Here, Plaintiff sought an award of EDB—not a remand to the Plan Administrator. (Dkt. 25.) Although Judge Feikens found that Sedgwick, GM, and the GM EBPC acted arbitrarily and capriciously in reviewing Plaintiff's claim for benefits, he also concluded that it was improper to award EDB without first giving Defendants another opportunity to conduct a full and fair review. *Blajei*, 2010 WL 2696757, at \*25. Accordingly, Plaintiff only obtained partial success—Defendants' termination of EDB was deemed arbitrary and Plaintiff will receive another evaluation of her claim, yet the Court could not find that Plaintiff was clearly entitled to EDB. The Magistrate Judge's reasoning in *Weaver*, subsequently adopted by Judge Borman, is both sound and

applicable to this case.[6] This conclusion accords with Part II, *supra*, finding that Plaintiff's Motion is not premature because Plaintiff obtained "some degree of success on the merits," and the Court's finding in Part III.E, *supra*, pertaining to the relative merits of the parties on remand. As such, the Court reduces Plaintiff's lodestar by fifty percent and Plaintiff is awarded $12,396.25 ($24,792.50 x 50%) in attorney's fees.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's Motion for Attorney Fees (Dkt. 39) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's motion is GRANTED IN PART to the extent that the Court issues an attorney's fee award in Plaintiff's favor, but DENIED IN PART in that the Court does not award Plaintiff the full amount requested. Plaintiff is AWARDED $12,396.25 in attorney's fees and $350.00 in costs pursuant to 29 U.S.C. § 1132(g)(1). Defendants are ORDERED to pay Plaintiff a total of $12,746.25. Payment must be made within 30 days of the issuance of this Order.

**IT IS SO ORDERED.**

s/Victoria A. Roberts_____
Victoria A. Roberts
United States District Judge

Dated:  September 28, 2010

---

[6]  Although 42 U.S.C. § 1988, the attorney's fees provision applicable to civil rights cases, includes a "prevailing party" requirement, which, as discussed, is absent from ERISA 502(g)(1), *Hardt*, 130 S.Ct. at 2152, there is no inconsistency in applying "the degree of success obtained" consideration in determining whether a fee *amount* is reasonable in an ERISA denial-of-benefits case. *See Hensley*, 461 U.S. at 433 ("A plaintiff must be a 'prevailing party' to recover an attorney's fee under § 1988. . . . [That a plaintiff is a 'prevailing party'] brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is 'reasonable.'"); *see also id.* at 436 ("That the plaintiff is a 'prevailing party' therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.").

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 28, 2010.

s/Linda Vertriest
Deputy Clerk